<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| L.B. and J.B. o/b/o J.B., L.B. and J.B., individually,<br><br>*Plaintiffs,*<br><br>v.<br><br>ROSELLE BOARD OF EDUCATION, KEVIN WEST, former Superintendent; MONICA AHEARN, Director of Special Services; TENNEH LEWIS, Social Worker and Case Manager; NICOLE RIVERA-FORBES, Social Worker and Case Manager; ROCHELLE BLUM, Psychologist; DANIEL EARLE, LDTC; FRAIDI SILBERBERG, Speech and Language Therapist; MARK FABER, Psychiatrist; CHANTEL JASEY, Transition Coordinator; SHANNON JORDAN, Teacher; and JOHN and JANE DOES, Administrators, Teachers, Child Study Team Members, Nurses, et al.; all in their individual capacities,<br><br>*Defendants.*[1] | Civil No.: 2:18-cv-11588 (KSH) (CLW)<br><br><br><br><br><br><br><br>**OPINION** |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.     Introduction**

Plaintiff L.B. brings this action individually and on behalf of her son, J.B., against

defendants Roselle Board of Education (the "District") and individual employees of the District

challenging the final administrative decisions of Administrative Law Judge Richard McGill and

---

[1] The caption used by the parties does not list defendant Rashon Mickens, Principal, who is included among the individual defendants in the body of the complaint. Further, pursuant to the Court's opinion dated May 14, 2021 (D.E. 75), J.B. (parent) was dismissed from this action.

Administrative Law Judge Ellen S. Bass.  *See L.B. on Behalf of J.B. v. Roselle Borough Bd. of Educ.*, OAL No. EDS 05079-16 (Apr. 13, 2018) (hereinafter "ALJ McGill Op."); *L.B. on Behalf of J.B. v. Roselle Borough Bd. of Educ.*, OAL No. EDS 16796-16 (Aug. 7, 2018) (hereinafter "ALJ Bass Op.").  The overarching issue on these claims is whether J.B. was denied a Free and Appropriate Education ("FAPE") as a student in the District from 2012-2018, and, if so, whether L.B. can recover reimbursement of the costs associated with J.B.'s placement at Union County Vocational Technical School and Stepping Forward Counseling Center.

L.B. first filed this action in the Office of Administrative Law under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and she here appeals the findings ALJ McGill and ALJ Bass made against her (counts one and two).  She also brings claims under the Rehabilitation Act of 1973 ("Rehabilitation Act" or "RA"), 29 U.S.C. § 701 *et seq.* (count five); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (count seven); the "thorough and efficient education" clause of the New Jersey Constitution, Art. VIII, § 4 par. 1 (count nine); and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* (counts ten and eleven).  The District has filed counterclaims against L.B. and J.B., appealing the findings ALJ McGill and ALJ Bass made against it and seeking a declaration that defendants' actions "individually and as a whole, were proper under all circumstances."  (D.E. 77, Answer, at 59-67.)

Before the Court now are the parties' cross motions on their respective appeals and, in plaintiffs' case, the additional federal and state law claims.  This is not their first round of motion practice.  This Court dismissed several counts from L.B.'s consolidated complaint for deficient pleading, leaving only the claims outlined above.  (D.E. 75, 76.)  The record the parties had offered was, in a word, problematic, and the Court cautioned them that "if the exhibits,

2

attachments, and outside references [the parties] rely on for purposes of further dispositive motion practice amount to the undisciplined mass of electronic filings and paper presented on this motion, their submissions will be rejected."  (D.E. 75, Mot. to Dism. Op., at 12.)

Having reviewed the parties' summary judgment submissions, the Court, ruling on counts one and two, affirms ALJ McGill's decision in full, and affirms ALJ Bass's decision except as to the transportation issue, which is remanded for further proceedings.  Notwithstanding the Court's cautionary language in the motion to dismiss opinion, the parties' summary judgment motions on the remaining claims—counts five, seven, nine, ten, and eleven—fall well short of offering the required basis for the Court to evaluate the arguments made, and they will be terminated as to those claims.  The parties are directed to re-file properly presented, properly supported motions, for the reasons set forth later in this decision.

## II.    Background

The following is taken from L.B.'s statement of material facts (D.E. 154-2 ("PSOMF")), the District's statement of material facts (D.E. 153 ("DSOMF")), and the final decisions of ALJ Richard McGill (D.E. 154 & Ex. 17) and ALJ Ellen Bass (D.E. 154 & Ex. 22).  Where a fact is disputed, the Court takes note; by and large the facts set forth in these documents are not in material dispute.

### A.  J.B.'s Education from 2012-2018

J.B. was born on October 13, 1998, and is now 26 years old.  (DSOMF ¶ 5.)  In 2012, as he was entering eighth grade and for the first time was a student in the District, he was classified as "communication impaired" and eligible for special education and related services based on that classification.  (*Id.*; PSOMF ¶ 17.)  His mother L.B. was a teacher in the District.  (DSOMF

¶ 17.)  Later, at some point, L.B. was involuntarily transferred to the school she previously taught at as a basic skills instructor.  (*Id.* ¶ 22.)

After J.B. began eighth grade, in October 2012 the District provided him with an Individual Education Program ("IEP") because of his special education eligibility.  (*Id.* ¶ 20.) The IEP placed him in general education classes with in-class support for math and language arts and speech-language therapy as a related service.  (PSOMF ¶ 18; ALJ McGill Op., at 3.)  L.B. disagreed with J.B.'s placement in a general education class—she believed he needed a self-contained smaller class like the one he had at his last school.  (ALJ McGill Op., at 46-47.) However, she signed off on the IEP.  (*Id.*)  On December 19, 2012, L.B. emailed the District stating that J.B. was not performing successfully in his general education class, and she believed he needed to be back in a self-contained class, but no changes were made that year.  (*Id.* at 47.)

The following school year, 2013-2014, L.B. requested J.B. repeat eighth grade because she was concerned about his reading levels.  (PSOMF ¶ 19.)  The IEP meeting to establish J.B.'s program was held on May 20, 2013, before the 2013-2014 school year started.  (*Id.*)  J.B.'s resulting IEP provided substantially the same disability classification, program, and placement as before.  (*Id.* ¶¶ 18-19.)  In May 2013, J.B. was functioning on a fourth-grade level although he was supposed to be entering high school.  (*Id.* ¶ 19.)

J.B. completed eighth grade in 2013-2014, and in the 2014-2015 school year, entered ninth grade at Abraham Clark High School ("ACHS").  (DSOMF ¶ 21; ALJ McGill Op., at 3.) J.B.'s IEP for that first year of high school placed him in general education classes with an in-class resource for English, math, science, and social studies, and speech-language therapy as a related service.  (PSOMF ¶ 20; ALJ McGill Op., at 3.)  L.B. again expressed concerns that J.B.

should be in a self-contained class, and his teachers reported to her that he was having trouble in his classes. (ALJ McGill Op., at 49.)

Over the course of the 2014-2015 school year, L.B. and the District had multiple meetings regarding J.B.'s IEP. (*Id.* at 49-50.) L.B. complained to ACHS personnel during the fall of 2014 and spring of 2015 that J.B. was being bullied by his peers, but the District did not find any evidence of harassment, intimidation, or bullying. (PSOMF ¶¶ 20, 26-28.) On January 29, 2015, J.B.'s IEP was amended to reflect that he had a seizure disorder and that L.B. was concerned he was being bullied which made him not want to go to school. (*Id.* ¶ 20; ALJ McGill Op., at 50.)

At a May 20, 2015 IEP meeting regarding J.B.'s tenth grade placement, the District proposed changing his program from in-class support to a consultative model, which provided extra services, including a special education teacher. (ALJ McGill Op., at 50-51.) J.B. would still be with general education students 80% of the school day. (*Id.*) For that tenth grade year, J.B. was also accepted into the Union County Vocational-Technical High School ("VoTech") for a half-day program; for the other half of the school day he was still enrolled to attend ACHS. (*Id.* at 3.) The draft of J.B.'s IEP provided that he was communication impaired and he needed speech language therapy and individual counseling services with the consultative model in the classroom. (*Id.* at 3-4.)

But J.B. did not enter tenth grade at ACHS. On Friday evening, May 22, 2015, J.B. was chased by several boys—one of whom he recognized from school—who attempted to steal his bicycle. (PSOMF ¶ 22; ALJ McGill Op., at 51.) L.B. filed another complaint with ACHS, but the incident was found not to be a school related matter. (ALJ McGill Op., at 51.) A few days later, J.B. stopped going to school and entered a partial hospitalization program at High Focus

Centers, where he was diagnosed with post-traumatic stress disorder, depression, and anxiety with suicidal ideations. (DSOMF ¶ 24.) The District was notified and on June 8, 2015, L.B. requested out-of-district placement for J.B., stating that she was concerned for his safety if he were to return to ACHS. (*Id.* ¶ 27; ALJ McGill Op., at 51-52; PSOMF ¶ 30.) An IEP meeting was held on June 18, 2015, and L.B. was given a Parental Rights in Special Education ("PRISE") booklet. (ALJ McGill Op., at 52; PSOMF ¶ 43.) L.B. did not consent to the new IEP, which was essentially unchanged from the proposed May 2015 IEP. (ALJ McGill Op., at 52.) J.B. remained in treatment from May to August 2015, and did not get any home instruction during those months. (DSOMF ¶ 25.) From August 2015 until April 2016, J.B. received out-patient therapy at Central Jersey Counseling Center. (PSOMF ¶ 37; DSMOF ¶ 26.)

In preparation for the 2015-2016 school year, L.B. sent the District an IEP meeting request in August 2015 and attached a letter from a psychiatrist at Central Jersey Behavioral Health that set forth J.B.'s diagnoses and a recommendation for an out-of-district placement. (ALJ McGill Op., at 52; PSOMF ¶ 45.) In addition to her out-of-district placement request, L.B. wanted J.B. to attend VoTech and for the District to pay for J.B.'s transportation costs related to VoTech. (ALJ McGill Op., at 52; PSOMF ¶ 45.) At the parties' IEP meeting on September 8, 2015, the District denied out-of-district placement and said J.B. would not receive services from the District if he did not return to ACHS. (ALJ McGill Op., at 52; PSOMF ¶ 46.)

Another IEP meeting followed on September 29, 2015. (PSOMF ¶ 47; DSOMF ¶ 28.) L.B. gave the District additional records on J.B.'s condition and consented to a spate of evaluations of J.B., including educational, psychological, speech and language, psychiatric, central auditory processing, vocational, and social assessments, to be conducted by the District. (PSOMF ¶¶ 47-48; DSOMF ¶ 29.) After these evaluations were completed, J.B. was diagnosed

with generalized anxiety disorder, major depressive disorder, and found to have fears associated with bullying at school. (PSOMF ¶ 51; DSOMF ¶¶ 38, 40.) The District continued to classify J.B. as communications impaired. (PSOMF ¶ 53.)

During this period, which stretched over the 2015-2016 school year, J.B. was going to VoTech for 2 hours a day and did not attend ACHS at all. (*Id.* ¶ 55.) L.B. filed her "first due process complaint and emergent relief on October 20, 2015, seeking home instruction, transportation, and copies of J.B.'s pupil records." (DSOMF ¶ 34.) In connection with the complaint, ALJ Imre Karaszegi ordered that L.B. give the District J.B.'s records from High Focus but denied all other emergent relief, and the matter was returned to the Office of Special Education. (*Id.* ¶¶ 35-36.) In early January 2016, two IEP meetings were held. J.B.'s IEP was updated to reflect his diagnoses, and his program was changed to a mild/moderate learning or language disabilities class for language arts, math, reading, social studies, and science with speech and counseling services. (ALJ McGill Op., at 3.)

Following their meetings, on January 14, 2016, the parties entered into a settlement agreement providing J.B. with home instruction and an independent psychiatric evaluation by Dr. Ellen Platt. (DSOMF ¶ 42; PSOMF ¶ 56.) In her report submitted in March 2016, Dr. Platt diagnosed J.B. with generalized anxiety disorder, major depressive disorder, and ADHD, and opined that J.B.'s diagnoses significantly impacted his ability to participate in his education in a traditional academic setting. (ALJ McGill Op., at 10; DSOMF ¶ 45.) Notwithstanding the agreement reached in January, the District was not providing home instruction to J.B. (PSOMF ¶¶ 57-58; DSOMF ¶ 62.) On April 18, 2016, J.B. entered a program at Stepping Forward Counseling Center, where he received home instruction and where he remained until August 25, 2017. (PSOMF ¶¶ 59, 66; DSOMF ¶ 49; ALJ McGill Op., at 3.) In his decision that is the focus

of L.B.'s and the District's respective motions under the IDEA, ALJ McGill ordered in September 2017 that J.B. be enrolled at the New Roads School, an out of district placement. (ALJ Bass Op., at 2.)

**B. Procedural History**

After her first filing in October 2015, L.B. filed another due process complaint on February 25, 2016 against the District on behalf of J.B.  (PSOMF ¶ 2.)  She contended that the District failed to provide J.B. with a FAPE, as defined by the IDEA, during the 2012-2013, 2013-2014, 2014-2015, and 2015-2016 school years and sought placement for J.B. in an out-of-district therapeutic school, transportation, and compensatory education.  (ALJ McGill Op., at 1-2.)

The matter was transmitted to the Office of Administrative Law on April 5, 2016 and assigned to ALJ McGill.  (*Id.* at 2.)  ALJ McGill denied the parties' pretrial motions for summary decisions, finding genuine issues of fact existed.  (PSOMF ¶ 3.)  A hearing commenced on August 26, 2016, and lasted for 25 days.  (ALJ McGill Op., at 2.)  ALJ McGill heard testimony from 13 witnesses, including L.B.; J.B.'s District social workers, psychologists, and teachers; and qualified as experts psychologists, psychiatrists, and consultants who evaluated J.B. and opined as to his past and present capabilities.  (ALJ McGill Op., at 5-46.)  In the course of the hearing process, the District removed J.B. from its academic rolls because he was not attending school.  (DSOMF ¶ 48.)

On October 21, 2016, ALJ McGill granted in part L.B.'s motion for emergent relief and ordered that J.B. should be receiving home instruction.  (ALJ McGill Op., at 2.)  On September 20, 2017, ALJ McGill granted L.B.'s motion for out-of-district placement of J.B. at the New Roads School.  (*Id.*)

*1. ALJ McGill's Decision*

In a 72-page opinion, ALJ McGill determined that the District had denied a FAPE to J.B. during the 2014-2015 and 2015-2016 school years, including and up until February 26, 2016—when L.B.'s due process complaint was filed.  (ALJ McGill Op., at 63.)

ALJ McGill relied on L.B.'s experts' testimony for this conclusion.  (*Id.* at 56.)  He noted that L.B.'s experts had "more experience and expertise" when compared to the District's experts, and specifically that L.B.'s witness Dr. Joseph Plasner—a psychologist with expertise in the placement of handicapped students with special needs—"provided a cogent and detailed analysis to support his opinion."  (*Id.* at 36, 56.)  Dr. Plasner reviewed J.B.'s records, solicited questionnaires from L.B. and a teacher of J.B. at VoTech, and interviewed J.B. and his parents.  (*Id.* at 36.)  Dr. Plasner concluded that J.B. could not be successful in an eighth or ninth grade class because in several areas he was only functioning on a third to fifth grade level which made the limited services provided in J.B.'s IEPs inadequate.  (*Id.* at 55-60.)  Generally, ALJ McGill found that J.B. needed "a program that would give him consistent emotional support throughout the day," with a "sufficiently small student-to-teacher ratio," "smaller class size," and one that is "therapeutic in nature."  (*Id.* at 60.)  He further opined that the program "should have counseling and teachers who are trained to deal with students with multiple disabilities, especially anxiety and depression."  (*Id.*)  J.B.'s IEPs "fell well short" of these requirements and as a result, the District denied him a FAPE.  (*Id.*)

ALJ McGill found that the District denied a FAPE to J.B. during the 2012-2013 and 2013-2014 school years as well.  However, and this L.B. strenuously objects to, he concluded that claims related to those years were barred by the IDEA's two-year statute of limitations.  (*Id.* at 60-62.)  Significantly, ALJ McGill found that the "knew or should have known" (in education

parlance, the "KOSHK") date, which is critical for the accrual of L.B.'s claims, was December 19, 2012 for her 2012-2013 school year claim (J.B.'s initial eighth grade year), when L.B. emailed the District that J.B. was not successful in his general inclusion class and needed to go back to a self-contained class.  (*Id.* at 61.)  He calculated that the limitations period for the 2012-2013 school year began to run on December 19, 2012 and ended on December 19, 2014, which was prior to the filing of L.B.'s due process petition on February 26, 2016.  (*Id.*)  As to L.B.'s 2013-2014 school year claim, ALJ McGill found that the KOSHK date was May 20, 2013—when L.B. found out that J.B.'s IEP provided for essentially same program as the prior year. (*Id.*)  ALJ McGill found that limitations period began to run on May 20, 2013 and ended on May 20, 2015, again prior to the filing of L.B.'s due process petition.  (*Id.*)

ALJ McGill declined to extend the two-year filing period pursuant to N.J.A.C. 6A:14-2.7(a)(i)-(ii),[2] which provides that a judge in their discretion may extend the filing period if the District withheld information that was required by law to be provided to the parent.  He found that L.B.'s argument—that the District did not provide her a copy of the PRISE booklet until June 18, 2015, which contained information that was legally required to be provided to her—was not credible.  (*Id.* at 61.)  ALJ McGill found that "L.B.'s testimony concerning notices, meeting and communications with District personnel, including in particular the claim that she did not receive a PRISE booklet until June 18, 2015, is not considered to be credible."  (*Id.* at 62.)  He noted that when L.B. was cross examined on that subject, she "gave many unresponsive answers, and she was generally extremely evasive," and the District's witnesses were more credible.  (*Id.*)

---

[2] N.J.A.C. 6A:14 *et seq.* sets forth regulations addressing the responsibilities of New Jersey schools to provide special education services to their disabled students, and the procedures in place if those services are alleged to be deficient.

ALJ McGill concluded there was no basis to extend the statute of limitations and that the 2012-2013 and 2013-2014 claims were time barred.  (*Id.*)

ALJ McGill found that J.B. met the criteria for multiply disabled under N.J.A.C. 6A:14-3.5(c)(6) because he had major depressive disorder, generalized anxiety disorder, and was emotionally disturbed.  (*Id.* at 57-59.)  At the same time, ALJ McGill found J.B. did not have a specific learning disability, since J.B.'s "psychological and emotional testing did not show a severe discrepancy in any of the eight areas set forth in N.J.A.C. 6A:14-3.5(c)(12)(i)."  (*Id.* at 56-57.)

Based on his findings, ALJ McGill ordered J.B.'s placement at the New Roads School out of district in Somerset, directed the District to provide J.B. with transportation to the New Roads School, and awarded J.B. one school year plus six months of compensatory education.  (*Id.* at 63.)

## 2. *ALJ Bass's Decision*

Before ALJ McGill made his decision L.B. filed a second petition for due process against the District in September 2016.  This was given a separate docket number and was not consolidated with the earlier one, albeit it was assigned as well to ALJ McGill.  (ALJ Bass Op., at 2-3.)  He retired, and the second petition was reassigned to ALJ Ellen Bass.  (*Id.* at 3.)  In May 2018, ALJ Bass held a telephone conference with the parties and "observed that their dispute essentially had been fully litigated; indeed, Judge McGill's April 2018 decision left little in contention."  (*Id.*)  The timeframe before ALJ Bass concerned whether J.B. was denied a FAPE between February 26, 2016 and November 2017 and if so what relief was warranted.  (*Id.*)  ALJ Bass directed the parties to file cross-motions for summary decision and heard oral argument on July 30, 2018.  (*Id.*)  The record was then closed.  (*Id.*)

In her decision dated August 7, 2018, ALJ Bass adopted the factual background as found by ALJ McGill and deferred heavily to his prior opinion. (*Id.* at 4, 11-12.) She found that J.B. was denied a FAPE for approximately three and one-half months, between February 27, 2016 and April 18, 2016, and again from August 25, 2017 to November 3, 2017. (*Id.* at 8-11.) ALJ Bass found that the District did not deny J.B. a FAPE when he was enrolled in Stepping Forward between April 18, 2016 and August 25, 2017 because "J.B.'s mother unilaterally withdrew him from his public-school program and placed him in a psychiatric facility" and because J.B. was receiving homebound instruction from the District at this time. (*Id.* at 12-13.) She also determined that the District was not responsible for reimbursing J.B.'s medical expenses while he was at Stepping Forward, which is a psychiatric facility. (*Id.* at 7, 12.)

ALJ Bass declined to award further compensatory education to J.B., finding that "compensation for the denial of FAPE to [J.B.] has been thoroughly addressed by Judge McGill" such that "no further relief is required or appropriate." (*Id.* at 16.) She noted that while the petition before ALJ McGill only raised claims until February 2016, ALJ McGill "addressed J.B.'s educational status in September 2017, when he placed him at New Roads, and in April 2018 when he ultimately ruled that New Roads was the appropriate placement and should continue." (*Id.* at 17.) ALJ Bass saw no need to award an additional three months of compensatory education, finding that on a balance of the equities ALJ McGill "more than adequately remedied the IDEA violations he found, including the denials of FAPE during 2016 and 2017 that are at issue before me. No one here will be served, most especially not J.B., by an additional 'cookie cutter' award of compensatory education." (*Id.* at 17-18.)

Before ALJ Bass, L.B. also sought reimbursement for the expenses of transporting J.B. from home to VoTech when he attended it in 2015-2016. (*Id.* at 14.) ALJ Bass held that the

claim was barred by the entire controversy doctrine, finding L.B. should have raised before ALJ McGill. (*Id.*) ALJ Bass ruled this matter was thus not before her on grounds that "this is a matter to take up on appeal." (*Id.* at 14-15.)

On July 12, 2018, L.B. sued the District, in federal court while ALJ Bass's decision was still pending, appealing ALJ McGill's decision while ALJ Bass's decision was still pending and raising additional federal statutory, state statutory, and state constitutional claims. (D.E. 1, First Compl.) Then on November 5, 2018, in a separate action that was assigned to Judge Kevin McNulty, L.B. appealed ALJ Bass's decision and asserted the identical additional claims against the District. (*See* Civil Action No. 18-cv-15699, D.E. 1.)

On February 15, 2019, Magistrate Judge Cathy Waldor *sua sponte* ordered the consolidation of these two actions. (D.E. 19.) A month later, L.B. filed the operative consolidated complaint, which seeks review of the parts of ALJ McGill's and ALJ Bass's opinions that found against L.B and raises the same additional federal statutory, state statutory, and state constitutional claims. (D.E. 26, Consol. Compl.) The District and the individual defendants of the District filed counterclaims against both L.B. and J.B., and appealed both ALJs' findings about the FAPE J.B. received, seeking a declaration that their actions "individually and as a whole, were proper under all circumstances." (D.E. 77, Answer, at 59-67.)

As indicated above, the District filed a motion to dismiss the operative complaint, which was partially successful in that the Court dismissed "J.B. (parent)" (J.B.'s father) from the action for lack of jurisdiction, and dismissed counts three, four, six, eight, and twelve for deficient pleading. (D.E. 75, Mot. to Dism. Op., at 3-11.) Thereafter, before Judge Waldor the parties moved for sanctions, discovery, extensions of time. They finally submitted the final pretrial

order (D.E. 143) and these cross-motions for summary judgment (D.E. 148, 154, 159, 164, 167, 168).

## III.    Standard of Review

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] failure of proof on one of the essential elements of a claim renders both of these requirements met." *Pyfer v. Am. Mgmt. Servs. (In re Nat'l Pool Constr., Inc.)*, 598 F. App'x 841, 844 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

On a motion for summary judgment, a court construes all evidence in a light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The burden is on the moving party to demonstrate that the evidentiary record presents no genuine issue of material fact. *Id.* If the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation modified). The standard remains the same when the parties have cross-moved for summary judgment: the Court reviews each motion individually and determines whether judgment is warranted under Rule 56. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

In an appeal of an administrative law judge's IDEA decision, the reviewing court is obligated to "to conduct a modified de novo review," giving "due weight" to the findings of the ALJ. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (citation and internal quotation marks omitted). As such, an ALJ's factual findings are reviewed

for clear error and are considered *prima facie* correct. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

A district court must also accept the ALJ's credibility determinations "unless nontestimonial, extrinsic evidence in the record justifies a contrary conclusion." *E.E. v. Ridgefield Park Bd. of Educ.*, 2020 WL 3097473, at *4 (D.N.J. June 11, 2020) (Vazquez, J.) (citing *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199-200 (3d Cir. 2004)). When there is no new evidence presented to the district court, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (Simandle, J.) (quoting *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997)), *aff'd*, 65 F. App'x 404 (3d Cir. 2003).

## IV.    Discussion

### A.    <u>IDEA Claims:  Counts 1 and 2</u>

#### 1.    *Statutory Framework*

The IDEA was passed "to remedy the pervasive and tragic academic stagnation" of disabled children who were not being provided appropriate services in public schools. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399-400 (2017). Under the IDEA, school districts receiving federal funding must "(1) timely identify students who need special education services and (2) provide a FAPE to those students." *B.S.M. v. Upper Darby Sch. Dist.*, 103 F.4th 956, 963 (3d Cir. 2024); *see* 20 U.S.C. § 1412. A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268-69 (3d Cir. 2012) (internal quotation marks

omitted).  While a state is not required to maximize the potential of every disabled child, it must provide more than *de minimis* progress each year.  *E.E.*, 2020 WL 3097473, at \*3 (citing *Endrew F.*, 580 U.S. at 402-03).  School districts must offer an "educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 403.

To accomplish that goal, school districts create and implement IEPs.  "[T]he essential function of an IEP is to set out a plan for pursuing academic and functional advancement" of the student, *id.* at 399, and should consist of "a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services."  *E.E.*, 2020 WL 3097473, at \*3 (quoting *D.S.*, 602 F.3d at 557).

"The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."  *Endrew F.*, 580 U.S. at 404.  The IEP offered must be "'*specially* designed' to meet a child's '*unique* needs' through an '[*i*]ndividualized education program.'"  *Id.* at 400 (quoting §§ 1401(29), (14)).  For children integrated in the general education classroom, IEPs should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade."  *Id.* at 394 (quoting *Bd. of Ed. of Hendrick Hudson Ctr. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 203-04 (1982)).

Courts may consider expert opinion in determining whether or not an IEP is effective. *See M.A.*, 202 F. Supp. 2d at 363.  An IEP may be found ineffective where a student is not receiving a meaningful educational benefit from school year to school year.  *See id.* at 362 ("[I]f a student had failed to make any progress under an IEP in one year, we would be hard pressed to understand how the subsequent year's IEP, if simply a copy of that which failed to produce any

gains in a prior year, could be appropriate." (quoting *Carlisle Area Sch. v. Scott P. By and Through Bess P.*, 62 F.3d 520, 527 (3d Cir.1995))).  After all, "access to an 'education' is what the IDEA promises."  *Endrew F.*, 580 U.S. at 401.

### 2.  *ALJ McGill's Decision*

L.B. and the District take issue with different parts of ALJ McGill's decision depending on which side it favored.  L.B. contends that most of ALJ McGill's findings should be affirmed, as he ultimately found J.B. was denied a FAPE and awarded him compensatory education.  But she argues that ALJ McGill was wrong that the statute of limitations barred review of J.B.'s IEPs for the 2012-2013 and 2013-2014 school years.  (D.E. 154, Pls.' Moving Br., at 5-10.)  She also contests ALJ McGill's finding on her credibility, despite acknowledging an ALJ's factual and credibility findings are entitled to deference and praises ALJ McGill's finding that her experts were more credible than the Districts' experts at the 25-day hearing before him.  (*Id.* at 5, 24.)

The law holds that "[a] due process complaint must be presented within 2 years' of a parent's reasonable discovery date of the action that forms the basis of the complaint."  *E.E.*, 2020 WL 3097473, at *4 (citation modified) (quoting *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015)).  What constitutes a "reasonable discovery date" on the parent's part is a highly fact-sensitive determination and as stated above, an ALJ's credibility findings are entitled to deference and should not be reversed unless nontestimonial, extrinsic evidence in the record requires it.  *Id.* at *5.

To determine this KOSHK date, courts generally focus on "clear action or inaction by a school district sufficient to alert a reasonable parent that the child would not be appropriately accommodated."  *McLean v. Eastampton School Dist.*, 2020 WL 728816, at *4 (D.N.J. Feb. 13, 2020) (Kugler, J.).  Parents may not "knowingly sit on their rights or attempt to sweep both

timely and expired claims into a single 'continuing violation' claim brought years later." *G.L.*, 802 F.3d at 625. The statute of limitations may be tolled only if a parent satisfies a statutory exception. In relevant part, N.J.A.C. 6A:14-2.7(a)(i)-(ii) provides that a judge may extend the two-year period for filing an IDEA due process hearing if: (i) a District misrepresented to the parent that the dispute was resolved, or (ii) the District "withheld information that was required by law to be provided to the parent."

L.B. has provided no basis for the Court to disturb ALJ McGill's credibility findings. He found that L.B.'s contention on what information she received from the District and when she got it was not believable. He determined:

> L.B.'s contention raises the question of her credibility. On cross-examination, L.B. gave many unresponsive answers, and she was generally extremely evasive. L.B. gave some contradictory answers, and her testimony conflicted that of the District's witnesses, who are considered to be more credible. L.B.'s testimony tracked documented events to a large extent, and her observations of J.B. are considered to be credible. Nonetheless, L.B.'s testimony concerning notices, meeting and communications with District personnel, including in particular the claim that she did not receive a PRISE booklet until June 18, 2015, is not considered to be credible.

[(ALJ McGill Op., at 61-62.)]

ALJ McGill therefore declined to extend the statute of limitations period and found that, based actions she undertook, L.B. knew her claims for the 2012-2013 school year arose during 2012, and her claims for the 2013-2014 school year arose in 2013. (*Id.* at 60-62.) She failed file her petition until February 2016, barring them. (*Id.*) L.B. does not persuasively argue that ALJ McGill's credibility findings about her testimony on when the District supplied her with the PRISE booklet should be reversed in the absence of any nontestimonial extrinsic evidence, especially since she pronounces his credibility findings about her experts, which underpin his conclusion that J.B. was denied a FAPE, are entirely satisfactory and should be affirmed.

For substantially the same reasons, the District's arguments against ALJ McGill's decision fail. The District contends that his determination that L.B.'s experts were more credible than the District's experts was erroneous, and also argues these witnesses offered impermissible net opinions because they did not personally observe J.B.'s programs or progress reports before reaching their conclusions. (D.E. 148, Defs.' Moving Br., at 23-29.)

As with L.B., however, the District has pointed to no nontestimonial, extrinsic evidence that would justify rejecting ALJ McGill's credibility determinations. Instead, the District simply disagrees with them and contends that its own witnesses' testimony was credible. This argument falls well short of what is required.

The Court is unpersuaded by the District's argument that L.B.'s experts offered nothing more than impermissible net opinions. "A 'net opinion' is a rule applied under New Jersey law and which dictates exclusion of expert testimony that contains 'bare conclusions, unsupported by factual evidence.'" *H.M. ex rel. B.M. v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011) (Hillman, J.). Net opinions are thus not admissible under the "fit" requirement of Fed. R. Civ. P. 702. *Id.*

In administrative law hearings, expert testimony is admissible if the ALJ finds that it is "[b]ased on facts and data perceived by or made known to the witness at or before the hearing," and (2) [w]ithin the scope of the special knowledge, skill, experience or training possessed by the witness." *A.L. v. Howell Twp. Bd. of Educ.*, 2025 WL 517841, at *8 (D.N.J. Feb. 18, 2025) (Quraishi, J.) (citing N.J. Admin. Code § 1:1-15.9(b); Fed. R. Evid. 702). Here, ALJ McGill qualified L.B.'s witness Dr. Plasner, who conducted an evaluation of J.B. in December 2015, as an expert "in school and general psychology, teacher of the handicapped and placement of children with special needs." (ALJ McGill Op., at 36.) In making his assessment, Dr. Plasner

reviewed J.B.'s records, interviewed J.B. and his parents, and solicited questionnaires of L.B. and one of J.B.'s teachers at VoTech.  (*Id.*)  Dr. Plasner opined that J.B. had multiple disabling conditions, "including depressive disorder, PTSD, ADHD, communication disorder, which would be his language disorder, and unspecified anxiety disorder," and recommended various accommodations and modifications to meet J.B.'s educational needs.  (*Id.* at 36-41.)  Specifically, Dr. Plasner recommended that J.B. be placed in a program that would give him "consistent emotional support throughout the school day," in a classroom with "a sufficiently small student-to-teacher ratio," that he receive "counseling for emotional support and guidance as well as ongoing medical treatment and psychotherapy," and that he not return to ACHS, "where his symptoms were created in regard to anxiety, major depressive episode and PTSD." (*Id.* at 36-37.)  Dr. Plasner opined that none of J.B.'S IEPs provided accommodations of this kind, and so they were not appropriate.  (*Id.* at 37-40.)

L.B.'s expert Deborah Ann Weyland was qualified, without apparent objection, as an expert "in learning disabilities, learning disability teacher consultant, and teacher of the handicapped."  (*Id.* at 41.)  She conducted an educational learning evaluation of J.B. in December 2015, "based on the Wechsler Individual Achievement Test, which assesses all areas of achievement."  (*Id.*)  She also administered assessments of reading comprehension and oral and written language, and reviewed J.B.'s prior evaluations and IEPs.  (*Id.* at 41-42.)  She opined that "J.B. has learning disabilities evidenced by his mathematical, reading and written language deficiencies that are significantly below grade level expectations" and recommended that J.B. receive direct instruction in a small group setting to catch him up.  (*Id.* at 41-43.)  Because J.B. was then, and had been since 2012, functioning below his grade level, and his IEPs did not

provide for necessary resources, Weyland determined that J.B.'s IEPs were not appropriate.  (*Id.* at 42-43.)

Her conclusions and Dr. Plasner's were based on the information these witnesses gathered relating to J.B.'s records and what they observed about him.  The findings they made and the conclusions they drew fit the case and were based on far more than "bare conclusions."

Of particular note in this Court's review of ALJ McGill's April 13, 2018 opinion is the sheer amount of time – 25 days – he held hearings on L.B.'s petition and his opinion's evident familiarity with the parties, their claims, and the steps each side took and the major events during the school years that J.B. spent in the District.  Notably, this ALJ did not take an easy out in respect to the school years he ultimately found were barred on statute of limitations grounds.  He made findings about them in his 72-page, reasoned decision.  Neither side has offered substantive objections or arguments that would justify this Court disturbing ALJ McGill's work. His decision is affirmed in full.

### 3.  *ALJ Bass's Decision*

L.B. argues that ALJ Bass erred (1) in declining to hold another due process hearing on L.B.'s claims for the 2016-2017 school year; (2) in finding that L.B. was not entitled to compensatory damages for J.B.'s placement at Stepping Forward from April 2016 to August 2017; (3) in finding that J.B. was not entitled to additional compensatory education; and (4) in finding L.B.'s transportation claim was barred by collateral estoppel.  (D.E. 154, Pls.' Moving Br., at 14-26.)  The District counters that L.B. was heard on these issues in front of both ALJ McGill and ALJ Bass and cannot expand the record now.  (D.E. 159, Defs.' Opp. Br., at 7-8.)

As stated above, ALJ Bass relied heavily on ALJ McGill's opinion, which was issued only a few months earlier.  She held she was bound by many of his factual and legal

determinations and that the parties' the dispute "essentially had been fully litigated" by the time it got to her. (*Id.* at 3-11.) On that basis, she ordered the parties to submit briefs and held oral argument as opposed to conducting a hearing.

The IDEA provides that "[w]henever a complaint has been received . . . the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). ALJ Bass decided that ALJ McGill had entertained the relevant facts underlying L.B.'s 2016-2017 claim in his 2018 decision. She determined that "nothing about J.B. or his profile was different from February 27, 2016 to April 18, 2016, when he entered Stepping Forward," and "[t]o the extent that J.B. may have presented differently when he was discharged from his psychiatric placement in August 2017," ALJ McGill made a ruling the very next month that J.B. "could only receive FAPE in a program like that offered by New Roads." (ALJ Bass Op., at 11-12.)

Guiding ALJ Bass's reasoning was her belief that L.B.'s two due process petitions should have been consolidated from their inception, since the complaints involve the same factual predicate and claims against the District. (*Id.* at 11, n.3.) The Court agrees. (Judge Waldor identified the same problem when she *sua sponte* issued the order to consolidate L.B.'s federal complaints after L.B. filed separate actions for obviously related matters instead of amending the complaint.) The IDEA does not contemplate that each claim of a complaint is entitled to a due process hearing, or that an attorney that files subsequent rolling complaints based on the same facts receives extra procedural rights. ALJ Bass did not deprive L.B. of notice or an opportunity to be heard on her 2016-2017 claim by not holding a second due process hearing, since L.B. was heard on the same factual predicate underlying her claim at the earlier due process hearing.

22

There is no basis to find that L.B. was deprived of her due process rights when ALJ Bass directed the parties to file summary motions.

On that basis, ALJ Bass found that the District denied J.B. a FAPE between February 26, 2016 and April 18, 2016 and again between August 25, 2017 to November 3, 2017. (*Id.* at 8-11.) During this time, J.B. was either waiting for home instruction or waiting to be placed at New Roads, his new school. (*Id.*) ALJ Bass found J.B. was denied a FAPE for a total of three months. (*Id.*) She did not find that the District denied J.B. a FAPE when he was enrolled in Stepping Forward from April 18, 2016 to August 25, 2017, for several reasons, including that "J.B.'s mother unilaterally withdrew him from his public-school program and placed him in a psychiatric facility" and he was receiving homebound instruction from the District at this time. (*Id.* at 12-14.)

She also determined that the District was not responsible for reimbursing J.B.'s medical expenses while he was at Stepping Forward. (*Id.* at 7, 12.) This Court sees no basis to disturb ALJ Bass's factual or legal findings on this point. Relying on ALJ McGill's finding that Stepping Forward is a medical facility, ALJ Bass found Stepping Forward did not "function[] as a school," so the District was not responsible for reimbursement of L.B.'s expenses as to J.B.'s care there. (ALJ Bass Op., at 12-13 (citing *Mary T. Sch. Dist. of Phila.*, 575 F.3d 235, 245-46 (3d Cir. 2009) (finding that the plaintiff's expenses stemming from her care at a psychiatric treatment center were "far beyond the capacity and the responsibility of the School District")).)

The Court has reviewed ALJ Bass's denial of an award of additional compensatory education for the three months J.B. received treatment at Stepping Forward, reasoning "the denial of FAPE to this student has been thoroughly addressed by Judge McGill"—based on his September 2017 order placing J.B. in New Roads and April 2018 opinion which continued J.B.'s

placement there.  (ALJ Bass Op., at 16-17.)  As such, she held that "no further relief is required or appropriate."  (*Id.*)  ALJ Bass determined that "[n]o one here will be served, most especially not J.B., by an additional 'cookie cutter' award of compensatory education."  (*Id.* at 17-18.)

An ALJ's award of compensatory education is a conclusion of law, subject to plenary review.  *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). Compensatory education may be awarded, in a court's discretion, "to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation."  *Garden Acad. v. E.M. o/b/o B.M.*, 2021 WL 308108, at *8 (D.N.J. Jan. 29, 2021) (Shipp, J.) (quoting *G.L.*, 802 F.3d at 625).  And courts should endeavor to award "appropriate" relief.  *Id.* (finding that the ALJ's compensatory education award of 223.6 hours was not appropriate relief since it was awarded almost a decade after the school deprived the plaintiff of his rights).

The Court finds that ALJ Bass did not err in declining to award an additional three months of compensatory education to J.B.  In L.B.'s November 2024 briefing, she noted that "[t]o date, the District has made up one year of services to J.B."  (D.E. 154, Pls. Moving Br., at 23.)  The briefing is unclear as to whether more compensatory education is forthcoming pursuant to ALJ McGill's award.  But what is clear is that the record does not demonstrate that J.B., now 26 years old, requires an additional three months of compensatory high school education or how that education would compensate for the educational progress J.B. lost from 2016-2017.  As in *E.M.*, the Court does not find this relief would be appropriate under the circumstances.

Finally, ALJ Bass held that L.B.'s claim for transportation costs was barred by the entire controversy doctrine.  Briefly, L.B. alleged that she was entitled to reimbursement for the expenses she incurred while transporting J.B. to VoTech during the 2015-2016 school year.  ALJ

Bass found that L.B. should have raised this issue at the hearing in front of ALJ McGill, because it concerned the timeframe that was properly before him. (*Id.* at 14-16.)  Scrutinizing the record it does appear that L.B. did bring up these transportation costs before ALJ McGill but asked that they be transferred to the second case. (*Id.* at 15.)  ALJ McGill acquiesced and determined that "all costs of the transportation will be considered in the second case." (*Id.*)

New Jersey's entire controversy doctrine "requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." *Wisniewski v. Travelers Cas. & Sur. Co.*, 390 F. App'x 153, 156 (3d Cir. 2010 (citation omitted); *see* N.J. Ct. R. 4:7-1, 4:30A.  It acts to bar a party's subsequent suit raising claims that "arise from related facts or the same transaction" if the "first proceeding produced a final judgment" and the party had a fair and reasonable opportunity to be heard there. *Crisafulli v. Twp. of Branchburg*, 2023 WL 3845304, at *2 (3d Cir. June 6, 2023).

The Court finds that L.B. brought a claim for transportation costs in her first petition. Notwithstanding, an agreement was reached that the claim would be decided in the second case and ALJ McGill never issued a decision on it.  ALJ Bass actually recognized that L.B. raised a transportation claim in front of ALJ McGill.  (*See* ALJ Bass Op., at 15 ("Both parties agree that Judge McGill never issued a ruling on the transportation issue even though it was before him.").)  This claim was thus not "omitted" from the first action.  As no ALJ has determined whether the District is indeed liable for these costs or what those costs are, a remand is required for determination of those issues. *See Elena M. by and through Hans M. v. Sch. Dist. of Phila.*, 2025 WL 968310, at *14-15 (E.D. Pa. Mar. 31, 2025) (remanding so the ALJ could make factual and credibility determinations as to the plaintiff's relief).

The Court therefore affirms ALJ Bass's opinion, except for her finding on the transportation issue, on which it remands for further proceedings.

### B. Additional Claims

In addition to the IDEA claims discussed in the foregoing sections, L.B.'s federal complaint, as described earlier, asserts statutory claims under § 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, the NJLAD, N.J.S.A. 10:5-1 *et seq.*, and a claim under the New Jersey Constitution, Article VIII, § 4 para. 1. It is not unusual for certain statutory claims to be asserted alongside an IDEA claim. *See, e.g.*, *A.J.T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 145 S. Ct. 1647, 1651 (2025); *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966, 970 (3d Cir. 2024); *J.M. v. Summit City Bd. of Educ.*, 39 F.4th 126 (3d Cir. 2022); *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260 (3d Cir. 2014); *Andrew M. v. Delaware Cnty. Office of Mental Health*, 490 F.3d 337 (3d Cir. 2007).

That "[m]ultiple federal laws afford 'diverse' (and occasionally overlapping) protections for children with disabilities in public schools," *A.J.T.*, 145 S. Ct. at 1652, does not mean that a violation of any one statute, on its own, invariably suffices to show a violation of any other statute. *J.M.*, 39 F.4th at 146-47 (observing that the IDEA and § 504 "have several common characteristics" but "also differ in important respects," and that "a denial of FAPE is not a per se violation of § 504"); *Andrew M.*, 490 F.3d at 350. Considerable ink has been spilled on the interplay between the IDEA and other statutory claims, including what showing a plaintiff must make to succeed on each of the claims asserted and where, when, and under what circumstances each type of claim may be brought. *See, e.g.*, *A.J.T.*, 145 S. Ct. at 1655 (discussing required

elements of education-based ADA and Rehabilitation Act claims); *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023) (addressing exhaustion as to non-IDEA claims).

At the summary judgment stage, it is not enough for a plaintiff having the burden of proof on a claim to rely on allegations or conclusory statements, either in support of an affirmative motion for summary judgment or in opposing a defendant's motion for summary judgment. Nor is it enough for a defendant seeking summary judgment to simply recite the elements of a cause of action and say, conclusorily, that they aren't met. Rule 56 requires a movant to be specific and invoke particular parts of the record to make their case. *See* Fed. R. Civ. P. 56(a), (c). Local Civil Rule 56.1(a) sets forth how this tethering of facts to asserted claims is to be presented. The case law likewise reflects this universally well known standard:

> The movant bears the initial burden of proof to present *those portions of the record* it believes demonstrate the absence of a genuine issue of material fact. If the movant makes this showing, the burden shifts to the non-moving party to offer evidence establishing the existence of a genuine dispute that compels a trial. Specifically, the non-movant 'must set forth *specific facts showing that there is a genuine issue for trial*' . . . *through affidavits or otherwise as provided by Rule 56* and must '*identify those facts of record* which would contradict the facts identified by the movant.' If the non-movant fails to do so, the Court must grant summary judgment.

*Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, 416 F. Supp. 3d 366, 370 (D.N.J. 2019) (Kugler, J.) (citations omitted). A plaintiff's failure of proof on an essential element of a claim on which it bears the burden of proof at trial "necessarily renders all other facts immaterial," and thus warrants summary judgment against the plaintiff. *Celotex Corp.*, 477 U.S. at 322.

The Court's task when presented with summary judgment motions is to sort through what has been competently presented and determine whether triable fact issues exist – genuine disputes on facts that are material to the claims. And underlying that, of course, is the requirement that a claim is properly before the Court in the first place. Here, the counts at issue

freely interchange "plaintiffs" and "J.B." in describing the alleged injuries, who is bringing the claim, and who is entitled to relief; they do not make clear what and/or quantum of relief is sought under what theory, and based on what specific facts; and arguments are made as to dismissed claims, theories, and parties. The briefing—by both sides—makes legal arguments without identifying what parts of the record support those arguments, leaving the Court, apparently, to discern for itself what parts of the Rule 56.1 statements are relevant to each claim.

Counts five and seven, asserting violation of Section 504 and the ADA, respectively, are illustrative. Plaintiffs' moving brief (D.E. 154-1, at 31) references individual defendants, but counts five and seven were asserted only against the District (D.E. 26, Consol. Compl. ¶¶ 119-27, 138-45). In opposing defendants' motion, plaintiffs purport to "consent to dismiss the complaint in reference to all named individual defendants in reference to counts Five and Six" (D.E. 164, at 14), but count six was already dismissed (D.E. 75, Mot. to Dism. Op., at 6-8) and, as noted, count five was not asserted against individual defendants.

Plaintiffs' moving brief also adds an argument that L.B. was retaliated against (D.E. 154-1, at 28-29), but these claims were brought as disability discrimination, not employment retaliation, claims; count six (which, again, was dismissed) mentioned alleged retaliation. L.B. appears to seek recovery to herself based on injuries J.B. allegedly suffered, which she cannot do. *See G.W. v. Ringwood Bd. of Educ.*, 2024 WL 1928447, at *7 (D.N.J. Apr. 29, 2024) (Semper, J.) (dismissing the plaintiff-parents' Section 504, ADA, and NJLAD claims because they were seeking redress of their child's alleged injuries, not their own). And what form of recovery is sought on these claims, as opposed to any other claim, is left unspecified.

These deficiencies preclude the Court from ruling on either side's summary judgment motions. Taking, again, counts five and seven as an example, what relief is sought on these

claims determines what facts are material, because when compensatory damages are sought a plaintiff has the burden of proving, in addition to its *prima facie* case, that the defendant intentionally discriminated, which in turn can be shown by deliberate indifference. *Dauphin*, 765 F.3d at 269.[3] If plaintiff is *not*, however, seeking compensatory damages, the question is raised (and goes unaddressed by the parties) whether a remand to the ALJ on the grounds discussed above poses an exhaustion issue for the rest of the (non-IDEA) claims. *Luna Perez*, 598 U.S. at 145, 147 (plaintiff's ADA claim seeking only compensatory damages was not barred for failure to exhaust using IDEA dispute resolution procedures). The issue of attorneys' fees raises a similar question. *See Le Pape*, 103 F.4th at 980 n.11. And, as noted above, who is seeking relief for what injuries determines whether that person has standing to do so.

The other claims are not pleaded, supported, or explained with any more clarity. Despite pleading what appears to be a novel state constitutional claim (as best the Court can discern, count nine seeks a determination that a denial of FAPE automatically gives rise to a violation of the "thorough and efficient" clause of the New Jersey Constitution), no relief is sought specific to that claim. Counts ten and eleven include undifferentiated allegations about disability discrimination, workplace discrimination, retaliation, aiding and abetting, and the rights of J.B. and L.B., and the summary judgment briefing fails to identify what specific facts in the record support each of these claims, and what relief is sought on each.

Who is asserting what claim against what defendant and what relief is pursued on each of those claims should be crystal clear at this point, nearly seven years into this litigation and with J.B. turning 27 years old in a few months, and the parties should be capable of articulating with

---

[3] Based on the case law cited in plaintiffs' brief, it appears compensatory damages are sought on these claims, but the complaint is less clear and the specific facts allegedly supporting these elements are left unsaid.

precision what record evidence does or does not support each element of those claims. After all, if any claim survives summary judgment, that means a trial, at which the parties would be tasked with convincing a factfinder of their respective positions with competent evidence. The Court has strained to interpret the record before it, but where even the most basic of information is left this unclear and the arguments are sloppily and/or deficiently made, such efforts are in vain.[4] And as a matter of law and prudence, the Court will not continue that effort when the remand on the IDEA claims has raised a potential exhaustion and related jurisdictional issue, as yet unaddressed by the parties.

The summary judgment motions are therefore TERMINATED with respect to all remaining claims aside from plaintiffs' IDEA claims at counts one and two. Assuming the parties are unable to reach a substantive resolution on these remaining claims, plaintiff(s) may refile a motion for summary judgment, in compliance with all procedural and substantive rules and requirements, with proper factual support set forth in the briefing as well as in the accompanying L. Civ. R. 56.1 statement. That submission shall be filed no later than July 31, 2025. Defendants may file opposition and, if desired, a cross-motion for summary judgment, no later than August 29, 2025. Their submission shall likewise comply with all procedural and substantive requirements, with appropriate factual support (or a showing, within the strictures of Rule 56, that factual support is lacking). Plaintiff(s) may file their reply in support of their summary judgment motion no later than September 19, 2025, and if defendants have by then cross-moved for summary judgment, plaintiffs' reply submission shall also incorporate their

---

[4] Nor can the Court simply grant summary judgment to defendants, whose briefing likewise fails to connect law to fact and instead recites elements and relies on its own say-so that certain of them are not satisfied. *Le Pape*, 103 F.4th at 981 ("Rule 56 disallows . . . a grant of summary judgment without examination of the factual record.").

opposition to defendants' cross-motion.  If defendants cross-move, their reply shall be filed no later than September 30, 2025.

No adjustments to the foregoing schedule will be made absent a factually-supported showing of extraordinary circumstances.  The sole exception is if the parties agree that the matter should be stayed pending the outcome of the administrative proceedings on remand.

## V.    Conclusion

Based on the foregoing, the parties' cross-motions for summary judgment are granted in part, denied in part, and terminated in part.  An appropriate order accompanies this opinion.


Dated: June 30, 2025                                    */s/ Katharine S. Hayden*
                                                       Katharine S. Hayden, U.S.D.J.